**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT   Middle District of Pennsylvania | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor: <br> George A. Dudick aka George Alan Dudick | Case Number: <br> 1:15-04066-MDF |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
  PNC Bank, National Association

**COURT USE ONLY**

Name and address where notices should be sent:
  PNC Bank, N.A.
  3232 Newmark Drive
  Miamisburg, OH 45342

Telephone number:                    email:

❒ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
   (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):
  PNC Bank, N.A.
  3232 Newmark Drive
  Miamisburg, OH 45342

Telephone number:                    email:

❒ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**   $_____ 200,677.04

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** ___Mortgage and Note___
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: <br> 3  3  2  4 | 3a. Debtor may have scheduled account as: <br> _____ <br> (See instruction #3a) | 3b. Uniform Claim Identifier (optional): <br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ <br> (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
   $_____ 200,677.04

**Nature of property or right of setoff:** ☑ Real Estate  ❒ Motor Vehicle  ❒ Other
Describe:  802 Deer Road, Fawn Grove, PA 17321

**Basis for perfection:** ___Recorded Mortage___

**Value of Property:** $_____

**Amount of Secured Claim:** $_____ 4,510.56

**Annual Interest Rate** __3.500__% ❒ Fixed  or  ☑ Variable
(when case was filed)

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❒ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❒ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❒ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❒ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❒ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Nicole LaBletta
Title: Attorney
Company: Udren Law Offices, P.C.
Address and telephone number (if different from notice address above):
111 Woodcrest Road, Suite 200
Cherry Hill, NJ 08003

/s/ Nicole LaBletta          10/06/2015
(Signature)                  (Date)

Telephone number: (856) 669-5400     email: nlabletta@udren.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____          _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

## Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | George A. Dudick aka George Alan Dudick | **Case number:** 1:15-bk-04066-MDF | |
| **Name of creditor:** | PNC Bank, National Association | Last four digits of any number you use to identify the debtor's account: | **3324** |

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**          (1) **$197,792.50**

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| **3.500** % | **05/01/2015** | **09/22/2015** | **$2,730.62** |
| _____ % | __/__/____ | __/__/____ + | $ _____ |
| Total interest due as of the petition date | | | **$2,730.62** |

Copy total here ▶ (2) **$2,730.62**

3. **Total principal and interest due**    (3) **$200,523.12**

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 08/03/15, 09/01/15 | (1) | $108.92 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $0.00 |
| 3. Attorney's fees | | (3) | $0.00 |
| 4. Filing fees and court costs | | (4) | $0.00 |
| 5. Advertisement costs | | (5) | $0.00 |
| 6. Sheriff/auctioneer fees | | (6) | $0.00 |
| 7. Title costs | | (7) | $0.00 |
| 8. Recording fees | | (8) | $0.00 |
| 9. Appraisal/broker's price option fees | | (9) | $0.00 |
| 10. Property inspection fees | 07/07/15, 08/07/15, 09/09/15 | (10) | $45.00 |
| 11. Tax advances (non-escrow) | | (11) | $0.00 |
| 12. Insurance advances (non-escrow) | | | $0.00 |
| 13. Escrow shortage or deficiency Do not include accounts that are part of any installment payment listed in Part 3.) | | (13) | $0.00 |
| 14. Property preservation expenses. Specify | | (14) | $0.00 |
| 15. Other. Specify | | (15) | $0.00 |
| 16. Other. Specify | | (16) | $0.00 |
| 17. Other. Specify | | (17) | $0.00 |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $153.92 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☒ No

☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | | |
|---|---|---|---|---|
| **1. Installment payments due** | Date last payment received by creditor | | <u>07/29/2015</u> | |
| | Number of installment payments due | (1) | <u>4</u> | |
| **2. Amount of installment payments due** | <u>4</u> Installments @ | + | $1,089.16 – 06/01/15 to 09/01/15 | |
| | <u>0</u> Installments @ | + | $0.00 | |
| | <u>0</u> Installments @ | + | $0.00 | |
| | <u>0</u> Installments @ | + | $0.00 | |
| | Total installments due as of the petition date | $4,356.64 | Copy total here ▶ (2) | $4,356.64 |
| **3. Calculation of cure amount** | <u>Add</u> total prepetition fees, expenses, and charges | | Copy total from Part 2 here ▶ + | $153.92 |
| | <u>Subtract</u> total of unapplied funds (funds received but not credited to account | | - | $0.00 |
| | <u>Subtract</u> amounts for which debtor is entitled to a refund | | - | $0.00 |
| | Total amount necessary to cure default as of the petition date | | | $4,510.56 |
| | | | | Copy total onto item 4 of Proof of Claim form |



YORK COUNTY
ASSESSMENT OFFICE

Prepared By: MERCANTILE COUNTY BANK
               123 NORTH STREET
               ELKTON, MD 21922
               (410) 838-6131

Return To:   MERCANTILE COUNTY BANK
               123 NORTH STREET
               ELKTON, MD 21922
               (410) 838-6131

Parcel Number: 28-000-CN-0002.B0-00000

Premises: 802 DEER ROAD, FAWN GROVE, PA 17321

—— Commonwealth of Pennsylvania ——— Space Above This Line For Recording Data ——

## OPEN-END MORTGAGE
This Mortgage secures future advances

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is
05-17-2006..................................... . The parties and their addresses are:

    MORTGAGOR:
        GEORGE A. DUDICK AND TAMMY L. DUDICK
        2511 AINTREE LANE
        FALLSTON, MD 21047

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional
       Mortgagors, their signatures and acknowledgments.

    LENDER:
        MERCANTILE COUNTY BANK
        ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF MARYLAND
        123 NORTH STREET
        P.O. BOX 100 ELKTON, MD 21922

**PENNSYLVANIA - MORTGAGE** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Experts® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 9/8/2005



(page 1 of 9)

Book 1812 Page 5149

Case 1:15-bk-04066-MDF   Claim 3-1 Part 3   Filed 10/06/15   Desc Loan Documents
Case 1:15-bk-04066-MDF   Doc 74   Filed 05/24/19   Entered 05/24/19 12:02:14   Desc
Main Document   Page 1 of 20   Page 7 of 26

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property: "SEE ATTACHED SCHEDULE A ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE"

The property is located in YORK........................................... at 802 DEER ROAD....................
                                           (County)
..............................................., FAWN GROVE..................., Pennsylvania 17321...............
        (Address)                          (City)                                    (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 230,500.00..............................................
This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
   PROMISSORY NOTE SIGNED BY GEORGE A. DUDICK AND TAMMY L. DUDICK DATED 05/17/06 IN THE AMOUNT OF
   $230,500.00 PLUS INTEREST. GEORGE A. DUDICK AND TAMMY L. DUDICK HAVE PROMISED TO PAY THIS DEBT IN
   REGULAR PERIODIC PAYMENTS AND TO PAY THE DEBT IN FULL NO LATER THAN 02/17/37.

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or



Express® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 8/8/2005

# EXHIBIT A

ALL THAT CERTAIN tract of land situate, lying and being in FAWN TOWNSHIP, York County, Pennsylvania, as limited and described by a survey of Joseph W. Shaw, R.S., of July 10, 1978, to wit:

LOT NUMBER ONE:

BEGINNING at a point located near the Southern side of Deer Road at Lot No. 2 of the above mentioned plan; thence along Lot No. 2 of the above mentioned plan the following 8 courses and distances: 1) South 05 degrees 07 minutes West, 243 feet to a point; 2) thence South 11 degrees 07 minutes West, 158 feet to a point; 3) thence South 28 degrees 20 minutes West, 260 feet to a point; 4) thence South 15 degrees 25 minutes West, 189 feet to a point; 5) thence South 56 degrees 06 minutes West, 186.50 feet to a point; 6) thence South 26 degrees 01 minute West, 150.50 feet to a point; 7) thence South 18 degrees 50 minutes West, 172 feet to a point; 8) thence South 41 degrees 00 minutes 05 seconds East, 978.40 feet and passing through an iron pipe set back 20 feet from the beginning of said course, to an iron pipe at lands now or formerly of Richard Jones; thence along said lands now or formerly of Richard Jones, South 18 degrees 42 minutes 00 seconds West, 232.96 feet to a white oak at lands now or formerly of John F. Gifford; thence along lands now or formerly of John F. Gifford; North 87 degrees 50 minutes West, 818 feet to an iron pipe at lands now or formerly of Edna McCleary; thence along lands now or formerly of Edna McCleary, North 01 degree 59 minutes West, 1928.50 feet and passing through an iron pipe setback 30 feet from the end of said course, and entering aforementioned Deer Road, to a point; thence in and through said Deer Road, the following 2 courses and distances: 1) North 68 degrees 07 minutes East, 518.52 feet to a point on the Northern side of Deer Road; 2) thence North 87 degrees 00 minutes East, 338.36 feet to the point near the Southern side of Deer Road and place of BEGINNING. CONTAINING 29.6805 acres.

IT BEING the same premises which Dorothy A. Emmel, widow, by Deed dated May 13, 1999, and recorded in the Office of the Recorder of Deeds in and for York County, Pennsylvania, in Record Book 1364, Page 3587, granted and conveyed unto George A. Dudick and Tammy L. Dudick, husband and wife.

incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required rescission notice.

5. **PAYMENTS.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

Experi©® © 1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-MTG-PA  9/8/2005

*(page 3 of 9)*

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Security Instrument, and this assignment will remain effective until the Obligations are satisfied. Mortgagor agrees that Lender is entitled to notify Mortgagor or Mortgagor's tenants to make payments of Rents directly to Lender after such recording, however Lender agrees not to notify Mortgagor's tenants until Mortgagor defaults and Lender notifies Mortgagor of the default and demands that Mortgagor and Mortgagor's tenants pay all Rents directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

Experia® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 9/8/2005



13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development (PUD), Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or PUD.

14. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous

Experis® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 9/8/2005



substance. Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.
Mortgagor represents, warrants and agrees that:

- A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
- B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
- C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
- D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any pending or threatened action to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give

Experse® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 9/8/2005

*(page 6 of 9)*



immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. Any provision that appoints Lender as an agent is not subject to the provisions of 20 Pa.C.S.A. Section 5601 et seq. (Chapter 56; Decedents, Estates and Fiduciaries Code). Lender, by exercising any of its rights under this Security Instrument, does so for its sole benefit. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its

Exñerã® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 9/8/2005



terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all.

25. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives any right to appraisement relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

    ☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

    ☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

    ☐ **Purchase Money.** This Security Instrument secures advances by Lender used in whole or in part to acquire the Property. Accordingly, this Security Instrument, and the lien hereunder, is and shall be construed as a purchase money mortgage with all of the rights, priorities and benefits thereof under the laws of the Commonwealth of Pennsylvania.

    ☒ **NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE.**

    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

        ☐ Condominium Rider  ☐ Planned Unit Development Rider
        ☐ Other ...............................................................

    ☐ **Additional Terms.**

Express® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 9/8/2005

Case 1:15-bk-04066-MDF   Claim 2-1 Part 3  Filed 10/06/15  Desc Loan Documents
Case 1:15-bk-04066-MDF   Doc 74  Filed 05/24/19  Entered 05/24/19 12:02:14  Desc
Main Document  Page 9 of 20  Page 15 of 26

**SIGNATURES:** By signing below, Mortgagor, intending to be legally bound hereby, agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

........................................................      ........................................................
(Signature) GEORGE A. DUDICK     (Date)     (Signature) TAMMY L. DUDICK       (Date)

........................................................      ........................................................
(Witness)                                       (Witness)

**ACKNOWLEDGMENT:**

(Individual) COMMONWEALTH OF PENNSYLVANIA........., COUNTY OF ....YORK......} ss.
On this, the 17TH......... day of MAY, 2006............., before me .............................,
the undersigned officer, personally appeared GEORGE A. DUDICK, TAMMY L. DUDICK................
............................................................................, known to me (or satisfactorily
proven) to be the person(s) whose name(s) is subscribed to the within instrument,
and acknowledged that he/she executed the same for the purposes therein contained.
In witness whereof, I hereunto set my hand and official seal.
My commission expires:

        (Seal)             _Danell M. Warner_
                                  _Notary Public_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DANELL M. WARNER, Notary Public
City of York, York County
My Commission Expires October 10, 2009

                                  Title of Officer

It is hereby certified that the address of the Lender within named is: 123 NORTH STREET, P.O. BOX 100,....
ELKTON, MD .21922..............................................................................................

                         _Cecilia Gast V.P._
                         CECILIA J GAST, VICE PRESIDENT

Experes © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-MTG-PA 9/8/2005            (page 9 of 9)

Case 1:15-bk-04066-MDF    Claim 2-1 Part 3   Filed 10/06/15   Desc Loan Documents
Case 1:15-bk-04066-MDF    Doc 74   Filed 05/24/19   Entered 05/24/19 12:02:14   Desc
Main Document    Page 16 of 26
Page 10 of 20

STOCK & LEADER

*YORK COUNTY RECORDER OF DEEDS*
*100 WEST MARKET STREET*
*YORK, PA  17401*

*Randi L. Reisinger - Recorder*
*Gloria A. Fleming - Deputy*



Instrument Number - ▮▮▮▮▮▮
Recorded On 5/22/2006 At 9:35:04 AM
* Instrument Type - MORTGAGE
  Invoice Number - ▮▮▮▮▮
* Grantor - DUDICK, GEORGE A
* Grantee - MERCANTILE COUNTY BANK
  User - DEF
* Customer - STOCK AND LEADER

Book - 1812   Starting Page - 5149
* Total Pages - 11

* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $25.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $2.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL | $54.00 |

PARCEL IDENTIFICATION NUMBER
  28000CN0062B000000
Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
## *PLEASE DO NOT DETACH*
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **1812**  Page: **5159**

JUN 1 9 2006

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS | |
|---|---|---|
| GEORGE A. DUDICK; TAMMY L. DUDICK<br>2611 AINTREE LANE<br>FALLSTON, MD 21047 | MERCANTILE COUNTY BANK<br>123 NORTH STREET<br>P.O. BOX 100<br>ELKTON, MD 21922 | Loan Number<br>Date 05-17-2006<br>Maturity Date 02-17-2037<br>Loan Amount $ 230,500.00<br>Renewal Of |

"I" includes each borrower above, jointly and severally. "You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of **TWO HUNDRED THIRTY THOUSAND FIVE HUNDRED AND NO/100** Dollars $ 230,500.00

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On 05-17-2006 I will receive the amount of $26,440.09 and future principal advances are contemplated.

Conditions: The conditions for future advances are ARE TO BE MADE IN ACCORDANCE TO DRAW SCHEDULE _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 05-17-2006 at the rate of 5.990 % per year until 05-17-2013

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be 3.000 PERCENT ABOVE the following index rate: THE WEEKLY AVERAGE YIELD ON UNITED STATES TREASURY SECURITIES ADJUSTED TO A CONSTANT MATURITY OF ONE YEAR.

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as EVERY 12TH MONTH BEGINNING 05-17-2013
A change in the interest rate will take effect _____

☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than 11.990% or less than 3.500 %. The rate may not change more than 2.000% each 12TH MONTH

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☒ The amount of each scheduled payment will change.   ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a PERIODIC basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 15 days after it is due, I agree to pay a late charge of 5.000% OF THE PAYMENT AMOUNT WITH A MIN OF $2.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount above: NO ADDITIONAL CHARGES IN CONNECTION WITH THIS LOAN

**PAYMENTS:** I agree to pay this note as follows:
MONTHLY PAYMENTS OF ACCRUED INTEREST CALCULATED ON THE AMOUNT OF CREDIT OUTSTANDING BEGINNING ON 06-17-2006, FOLLOWED BY 360 MONTHLY PAYMENTS OF $1,380.49 BEGINNING 03-17-2007.

**ADDITIONAL TERMS:**

PAY TO THE ORDER OF

Without Recourse SBM mercantile county Bank
PNC Bank, National Association
michelle krivacek
Michelle Krivacek - Loan Support Specialist II

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
MORTGAGE DATED 05/17/06

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is _____

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

Signature for Lender

Cecilia J Gast, V.P.
CECILIA J GAST, VICE PRESIDENT

GEORGE A. DUDICK

Tammy L. Dudick
TAMMY L. DUDICK

UNIVERSAL NOTE V06.20

Case 1:15-bk-04066-MDF   Doc 74   Filed 05/24/19   Entered 05/24/19 12:02:14   Desc Main Document   Page 20 of 26

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

This "Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where your rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me or allow purchases on credit by me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving my right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest); or

(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Exp<u>ere</u>§ © 1991, 1993 Bankers Systems, Inc., St. Cloud, MN Form UN-24(3/93)

Case 1:15-bk-04066-MDF   Doc 74-1   Part 3   Filed 10/06/15   Desc Exhibits
Page 15 of 20

Dudick, George
Dudick, Tammy

## AGREEMENT FOR MODIFICATION OF DEED OF TRUST AND NOTE

This Agreement for Modification and Restatement of Note (hereinafter "Agreement") is made this 17th day of December, 2006, by and between George A. Dudick & Tammy L. Dudick (hereinafter "Borrower") jointly and severally if more than one, and Mercantile County Bank (hereinafter "Bank").

WHEREAS, by Mortgage (hereinafter "Mortgage") dated May 17, 2006, and recorded in Deed Book 1812 at Page 5149 among the land records of York County, Pennsylvania, Borrower, conveyed certain real property to secure the payment of Borrower's note (hereinafter "Note") dated the same day in the principal sum of TWO HUNDRED THIRTY THOUSAND FIVE HUNDRED DOLLARS AND NO CENTS ($230,500.00) all of which is more particularly set forth in said Mortgage and Note, and including any and all previous modifications, amendments and extensions thereto; and

WHEREAS, the said parties desire to modify the terms of said Note.

NOW, THEREFORE, in consideration of the sum of Ten dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt whereof by each of the parties is hereby acknowledged, and further in consideration of the agreements, covenants, conditions and stipulations set forth herein, the parties hereto, for themselves and their respective successors and assigns do hereby covenant and agree as follows:

1. The foregoing recitations accurately reflect the facts therein recited and the intentions and agreements of the parties and are incorporated herein by reference.

2. That the current remaining unpaid principal balance due under the Note is $230,500.00 with interest in the amount of $ -0- and late charges and other fees in the amount of $ -0-.

3. That Borrower agrees to pay the unpaid principal balance of the Note with interest upon the following terms and conditions which shall constitute a restatement of the Note:

### ADJUSTABLE RATE NOTE

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| December 17, 2006 | Fawn Grove, York County | Pennsylvania |
|---|---|---|
| [Date] | [City] | [State] |

802 Deer Road, Fawn Grove, Pennsylvania 17321

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $230,500.00, TWO HUNDRED THIRTY THOUSAND FIVE HUNDRED DOLLARS AND NO CENTS (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **MERCANTILE COUNTY BANK.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 5.99%. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 17th day of each month beginning on January 17, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on December 17, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 130 South Bond Street, Bel Air, Maryland 21014 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,380.49. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 17th day of December, 2013 and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one (1) year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

2

### (C) Calculation of Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three percentage points (3.00%) to the Current Index. Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Change

The interest rate I am required to pay at the first Change Date will not be greater than 7.99% or less than 3.99%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2%) from the rate of interest I have been paying for the preceding twelve months. **My interest rate will never be greater than 11.99% or less than 3.50%.**

### (E) Effective Date of Change

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge

3

to the permitted limit; and, (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest with a minimum of $2.00. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a difference address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

4

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

4.  The parties agree that any time the Note or this Agreement refer to the maturity date, that maturity date shall be interpreted to be December 17, 2036.

5.  Both the Bank and Borrower acknowledge that the other is neither in arrears nor in default of the terms of said Mortgage and Note and that each has fully performed all obligations.

6.  Except as herein specifically modified by this Agreement, all of the terms, covenants, conditions, and agreements of the aforesaid Mortgage and Note, and all other loan documents, shall remain in full force and effect.

7.  This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, shall be modified only in writing signed by the parties, and shall be binding upon the parties, their heirs, personal representatives, successors, and assigns.

WITNESS the following signatures and seals:

_____
George A. Dudick

_____
Tammy L. Dudick


MERCANTILE COUNTY BANK

By: _____


5